## JEFFRIES, Adm'r, v. LAURIE.[1]

(*Circuit Court, E. D. Missouri.*  April 2, 1886.)

1. ATTORNEY AT LAW—DISBARMENT FOR FAILURE TO OBEY ORDER TO PAY OVER MONEY COLLECTED FOR CLIENT—MOTION FOR REHEARING OVERRULED.
2. CONSTITUTIONAL LAW—IMPRISONMENT FOR DEBT—CONTEMPT—ATTORNEY AND CLIENT.

Imprisonment for contempt in failing to obey an order to pay over money collected for a client is not "imprisonment for debt," within the meaning of section 16 of article 2 of the constitution of Missouri. Lack of money is no excuse in such cases.

At Law.  Motion for rehearing.  For previous opinions herein, see 23 Fed. Rep. 786, and *ante*, 195.

*T. B. W. Crews,* for plaintiff.

*J. S. Laurie, pro se.*

BREWER, J., (*orally.*)  There is one other matter which I must dispose of this morning, and that is the motion for rehearing in *Jeffries* v. *Laurie.*  There are two questions presented:

One, whether, under the circumstances of the case, there should have been any order punishing for contempt.  Counsel has filed two briefs, arguing that it is, as the case now stands, practically no more than an attempt to collect a debt by the process of imprisonment, which is forbidden by your constitution.  He says, "Here is an order for the payment of money, and the party has not the money with which to comply with the order, and therefore the court punishes by imprisonment simply for failure to pay money in accordance with the order."  I think counsel misapprehend the situation.  The punishment is not technically and simply for a disobedience of an order, standing by itself, for the payment of money.  The matter lies deeper than that.  This proceeding is based upon the fact that counsel has collected money, and failed to pay it over to his client, and the order which was made for payment is simply an adjudication of the existence of the prior wrong.  If it had been shown that counsel collecting money had been robbed of it, or had lost it by means beyond his control, of course no peremptory order for payment would have been made.  The fact that the order was passed is upon the idea that there had been prior misconduct in not paying over; so this is not to be treated as an attempt to collect a debt by imprisonment, but as a summary proceeding resting wholly upon the fact of the professional misconduct of the attorney in collecting money belonging to his client, and appropriating it to his own use.  The order was simply one step in the proceeding.

The other matter is this:  Waiving the question of the power of the court to punish for a contempt, it is insisted that the order disbar-

[1] Reported by Benj. F. Rex, Esq., of the St. Louis bar.

ring was beyond the scope of this proceeding, and beyond the power of the court in this proceeding. My attention was called to two or three cases decided by the supreme court of the United States, in addition to the one to which I referred day before yesterday.

First, let me say that the case, *In re Paschal*, 10 Wall. 491, which I referred to, and on which I based my order, was a case exactly parallel with this. The motion in the *Paschal Case* was for an order on Paschal to pay to the clerk of the court, for the benefit of the state of Texas, the sum of forty-seven and odd thousand dollars in gold, alleged to have been collected by him in certain litigation. To that motion defendant answered, admitting the receipt of the money, but setting up the grounds under which he retained it; and upon that motion, precisely like this, the court, by Mr. Justice BRADLEY, without any dissenting opinion, says, that "for such improper conduct the court may entertain summary proceedings against any of its officers, and may, in its discretion, punish them by fine or imprisonment, or discharge them from the functions of their offices."

The case of *Ex parte Bradley*, 7 Wall. 364, was this: Joseph H. Bradley was, as alleged, guilty of contempt of the criminal court in the District of Columbia. One of the judges of the supreme court held that criminal court, so proceedings were commenced in the supreme court of the District of Columbia to punish him for that contempt, but the supreme court of the United States held that the supreme court of the District of Columbia had no jurisdiction of a contempt against the criminal court of the District, and therefore that the charge made was one which the supreme court of the District of Columbia could not entertain; and, further, that that being the only matter charged in the complaint, the court had no power to disbar Mr. Bradley.

In the case of *Ex parte Robinson*, 19 Wall. 505, the grand jury of the Western district of Arkansas reported to the court that a witness, when subpoenaed, had fled, and that he said that he was advised to do so by Mr. Robinson. Upon the report of the grand jury the court ordered an attachment against Mr. Robinson, and he being brought up and called upon to answer, declined to answer, and the court disbarred him. The supreme court set that aside, holding that the specific charges against him were not such as to justify the action, and that, while the court might punish for misconduct in open court, (in the return to the writ of *mandamus* it was stated that Robinson said he would not answer, and spoke in a loud and disrespectful tone,) yet the power to punish for contempt simply was limited to fine and imprisonment. But that does not in any manner limit or qualify this decision in *Re Paschal*, although it holds that the proceeding for disbarment is a separate matter.

In the case of *Ex parte Wall*, 107 U. S. 265, S. C. 2 Sup. Ct. Rep. 569, Wall was charged, by an order entered of record, with conduct unbecoming an attorney. It appeared that he had been guilty of no

misconduct as an attorney. The matter which was charged and proved against him was that he had joined a mob that had taken a man out and hung him, and he contended that the court had no power to punish him as an attorney, or disbar him for misconduct not as an attorney, but misconduct affecting his general character as a citizen; that if he had been guilty of any wrong in that respect, he should have been prosecuted by indictment, and, if convicted of an offense against the criminal law, then, and only then, could he be disbarred. The supreme court, with a vigorous dissent, sustained the order of disbarment, holding that, although the conduct was not conduct as an attorney, or in his character as an attorney, yet it was conduct of such a nature as that showed he was not fit to be an attorney, and that no previous indictment and conviction were necessary.

But that throws no light upon this question, for there there was a distinct charge, and the sole inquiry was as to the sufficiency of the charge. Now, in this case, there was a distinct charge of the very misconduct which the supreme court, in *Re Paschal*, says is ground for removing an attorney. To that charge, stated in full and filed upon the records of this court, there was an answer, followed by inquiry and adjudication. It seems to me that it comes plainly within the decision in *Re Paschal;* and while, of course, it is not a pleasant thing for the court to do, and reluctantly I take cognizance of any motions of this kind, yet I think the good name of our profession requires action. It would be a severe criticism upon our profession if clients were advised, by the failure of the court to act, that their counsel could keep their money because of a quarrel between themselves.

The petition for rehearing will be overruled. The order will be that the party may go on bail for the period of 10 days, upon giving bond in the sum of $2,000 for his appearance at the end of that time; the imprisonment, unless the order therefor be set aside by the supreme court, to commence at the expiration of the 10 days.